UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RICHARD HARRIS,

      Plaintiff,

v.                                  Case No. 3:22-cv-667-BJD-LLL

R.E. LINDBLADE, et al.,

      Defendants.
_____

## ORDER

### I. Status

Plaintiff, Richard Harris, an inmate of the Florida Department of Corrections (FDC), is proceeding *pro se* and *in forma pauperis* on a second amended complaint (Doc. 25; Sec. Am. Compl.) under 42 U.S.C. § 1983 against three Defendants: R.E. Lindblade, a corrections officer; A. McDonald, a corrections officer; and Jason Howell, a registered nurse. *See* Sec. Am. Comp. at 2-3.[1] Before the Court is Defendants Lindblade and McDonald's motion to dismiss (Doc. 38; Def. Mot.) with exhibits (Docs. 38-1 through 38-3; Def. Exs.

---

[1] Shortly after Plaintiff initiated this action, the Court directed him to submit an amended complaint because he did not use the Court-approved form. *See* Order (Doc. 7). Upon receipt of his amended complaint (Doc. 15), the Court directed Plaintiff to amend yet again because his amended complaint was deficient. *See* Order (Doc. 18).

A-C), which Plaintiff opposes (Doc. 40; Pl. Resp) with exhibits (Docs. 40-1 through 40-4; Pl. Exs. A-D).[2] Among other reasons, Defendants seek dismissal for Plaintiff's failure to exhaust his administrative remedies before initiating this action. *See* Def. Mot. at 5, 15.

As relevant to the present motion, Plaintiff alleges Defendants Lindblade and McDonald physically assaulted him on May 12, 2022, in retaliation for writing grievances. *See* Sec. Am. Compl. at 7-8, 10. According to Plaintiff, Defendants were escorting him (in his wheelchair) for a pre-confinement medical assessment and, once inside the holding cell, Defendant Lindblade chocked him, and Defendant McDonald "smashed [his] knees into a metal bench." *Id.* at 7-8. Plaintiff maintains Defendants' conduct violated his rights under the First Amendment (retaliation), the Eighth Amendment (excessive force), and the Fourteenth Amendment (denial of equal protection). *Id.* at 5-6, 10.

Plaintiff concedes in his civil rights complaint form that he filed no grievances related to the claims on which he seeks to proceed. *Id.* at 12.

---

[2] Defendant Howell separately moves to dismiss the complaint (Doc. 47). Plaintiff has not responded to that motion, despite the Court having advised him in two separate Orders that he has 45 days to respond to a motion to dismiss and a failure to do so will result in the motion being deemed unopposed. *See* Orders (Docs. 6, 27). The Court will direct Plaintiff to show cause why the claims against Defendant Howell should not be dismissed for his failure to respond to Howell's motion to dismiss.

However, he implies the grievance process was unavailable to him because the grievance process at his institution (Suwannee) is being "manipulated," and he fears reprisal. *Id.* at 13. He also contends he gave a written and oral statement to the Office of the Inspector General (IG's Office). *Id.*

## II. Exhaustion

The Prison Litigation Reform Act (PLRA) provides, "[n]o action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purpose of this requirement "is to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1214-15 (11th Cir. 2015). Exhaustion of available administrative remedies is "a precondition to an adjudication on the merits." *Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008). *See also Jones v. Bock*, 549 U.S. 199, 211 (2007). While "the PLRA exhaustion requirement is not jurisdictional[,]" *Woodford v. Ngo*, 548 U.S. 81, 101 (2006), "exhaustion is mandatory . . . and unexhausted claims cannot be brought," *Pavao v. Sims*, 679 F. App'x 819, 823 (11th Cir. 2017)[3] (citing *Jones*, 549 U.S. at 211).

---

[3] Any unpublished decisions cited in this Order are deemed persuasive authority on the relevant point of law. *See McNamara v. GEICO*, 30 F.4th 1055, 1061 (11th Cir. 2022).

3

Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set forth in applicable administrative rules and policies. *Woodford*, 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" *Id.* Generally, to properly exhaust administrative remedies, a Florida inmate must timely complete a three-step process as fully set forth in the Florida Administrative Code (FAC). *See* Fla. Admin. Code rr. 33-103.001 through 33-103.018. Except for specific, enumerated issues, an inmate generally must initiate the grievance process by filing an informal grievance within "20 days of when the incident or action being grieved occurred." *See* Fla. Admin. Code rr. 33-103.005(1), 33-103.006(3), 33-103.007(3), 33-103.011(1)(a).

The second step of the grievance process requires an inmate to submit a formal grievance at the institution level within 15 days from "[t]he date on which the informal grievance was responded to." *See* Fla. Admin. Code rr. 33-103.006(1), 33-103.011(1)(b). The final step of the grievance process requires an inmate to submit an appeal to the Office of the Secretary of the FDC within 15 days "from the date the response to the formal grievance [was] returned to the inmate." *See* Fla. Admin. Code rr. 33-103.007(1), 33-103.011(1)(c).

An inmate my not proceed to a subsequent step in the grievance process before receiving a response to the grievance under review or, if no response is

given, before "expiration of [the] time limit" for the respective prison official to have responded. *See* Fla. Admin. Code r. 33-103.011 ("Time Frames for Inmate Grievances"). Similarly, an inmate may not initiate a civil action while he is still completing the grievance process. In other words, filing suit while the grievance process is still underway does not constitute "proper exhaustion" under the PLRA. *See Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) ("[T]he plain language of the statute adequately puts prisoners on notice that they must exhaust their administrative remedies before pursuing prison-related civil actions in federal court."). *See also Okpala v. Drew*, 248 F. App'x 72, 73 (11th Cir. 2007) (affirming *sua sponte* dismissal of an inmate's action where it was "undisputed" that the plaintiff filed his action before receiving a response to his grievance appeal).

Inmates are not required to "specially plead or demonstrate exhaustion in their complaints." *See Jones*, 549 U.S. at 216. The determination of whether an inmate exhausted his available administrative remedies before pursuing a federal claim is a matter of abatement, properly addressed through a motion to dismiss. *See Bryant*, 530 F.3d at 1374-75. As such, the defendant bears the burden. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). When confronted with an exhaustion defense, courts in the Eleventh Circuit employ a two-step process:

5

> First, [a district court should] look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. . . . Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust.

*Whatley*, 802 F.3d at 1209 (citing *Turner*, 541 F.3d at 1082-83).

The parties agree that grievance #2206-231-039 is relevant given both attach it (and the response) for the Court's review. *See* Def. Ex. C; Pl. Ex. C. This was a formal grievance Plaintiff directed to the Warden's office on May 23, 2022. *See* Def. Ex. C at 3. In the grievance, Plaintiff did not explicitly say that Defendant Lindblade choked him and Defendant McDonald smashed his legs against a metal bench, but he identified Defendants by name, mentioned the date of the incident, said that whatever happened caused him to lose consciousness, and complained that staff were attempting to "cover up" the "unconstitutional [and] injurious actions of security staff against [him]." *Id.* at 3-4.[4]

The formal grievance was stamped as received on June 8, 2022, *id.* at 3, which means the Warden's office had until June 28, 2022 to respond, *see* Fla.

---

[4] Plaintiff submitted this grievance as a "medical grievance." *See* Def. Ex. C at 1. However, given he mentions Defendants Lindblade and McDonald and the date of the alleged incident, the Court liberally construes the grievance as an attempt to grieve the incident that is the subject of the complaint.

Admin. Code r. 33-103.011(3)(b) (providing a response to a formal grievance must be made within "20 calendar days from the date of receipt of the grievance"). The grievance was denied on June 13, 2022, three days *after* Plaintiff initiated this action on June 10, 2022 (mailbox rule). *See* Def. Ex. C at 2. Plaintiff does not address in his response his failure to wait for a response or his failure to complete the grievance process before initiating this action. *See generally* Pl. Resp. Rather, he faults prison officials for mailing the response to his grievance the day after the response was signed. *Id.* at 3.

Plaintiff does not explain why a one-day delay in mailing the response interfered with his grievance efforts. Regardless, the fact remains that Plaintiff initiated this action before he received a response to his formal grievance and, indeed, before the response time expired. To the extent the parties do not materially dispute the relevant facts as it relates to the referenced formal grievance (#2206-231-039), the Court finds it can decide the exhaustion issue at the first step of the *Turner* analysis. The undisputed facts show that Plaintiff sought judicial relief before completing the grievance process. As such, Plaintiff did not *properly* exhaust his administrative remedies in accordance with the rules set forth in the FAC. *See Okpala*, 248 F. App'x at 73.

The parties appear to dispute some facts, however, related to the "availability" of Plaintiff's administrative remedies. As such, the Court

proceeds to the second step of the *Turner* analysis, which requires the Court to make findings of fact. *See Turner*, 541 F.3d at 1083. *See also Bryant*, 530 F.3d at 1376 (holding district courts must act as factfinders when ruling on matters in abatement, such as exhaustion). "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies." *Ross v. Blake*, 578 U.S. 632, 638 (2016). Administrative remedies are "available" when they are "capable of use" or "accessible," regardless of whether they favorably resolve an inmate's complaint. *Id.* at 642-43.

Administrative remedies are deemed "unavailable" only in three narrow circumstances: (1) when the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the procedural mechanism is "so opaque" that reasonable inmates cannot "navigate it"; or (3) when prison officials actively prevent inmates from using or accessing the grievance process through "machination, misrepresentation, or intimidation." *Id.* at 643-44.

Plaintiff does not argue the grievance rules under the FAC are so opaque as to be impossible to navigate. On the contrary, he acknowledges that he "knows available administrative remedies are to be exhausted, *before* bringing legal claims to the Court." *See* Pl. Resp. at 2 (emphasis added). *See also* Pl. Ex. D at 2 (Plaintiff's grievance in which he wrote, "[The courts] know that I know

8

to exhaust my remedies before I even attempt to receive relief from the courts"). In arguing the grievance process was unavailable to him, Plaintiff points to the other two circumstances identified in *Ross*: the grievance process was a dead-end; and prison officials prevented him from accessing it.

First, Plaintiff suggests the grievance process at Suwannee Correctional Institution operates as a "dead end" because, of the 157 grievances he filed between February 14, 2017, and June 15, 2022, only five were approved and, in those circumstances, he did not receive relief. *See* Pl. Resp. at 1-2. Simply because the grievance process has not been successful for (or favorable to) Plaintiff does not mean the grievance process itself is a dead end. Plaintiff points to no facts suggesting that his denied grievances had merit, nor does he describe facts permitting the reasonable inference that "officers [are] unable or consistently unwilling to provide any relief to aggrieved *inmates*." *See Ross*, 578 U.S. at 643 (emphasis added). That Plaintiff is displeased with responses to his own grievances does not mean the grievance process itself is a sham such that no inmate can successfully access it. For instance, Plaintiff does not describe a situation in which the FAC directs inmates to "submit their grievances to a particular administrative office—but in practice that office disclaims the capacity to consider" the grievances. *See id.*

9

Second, Plaintiff contends the grievance process was unavailable to him because prison officials actively prevented him from using the process in two ways: by failing to process grievances; and by threatening him. As to the former argument, Plaintiff contends he filed a second grievance on May 23, 2022, specifically complaining about Defendants' use-of-force, but the grievance was not "processed." *See* Pl. Resp. at 3. Plaintiff's unsupported contention that a grievance was not processed lacks credibility given other facts. Most notably, in his complaint, Plaintiff himself concedes he filed no grievances about the claims he raises. *See* Sec. Am. Compl. at 12. Moreover, the records provided by all parties show Plaintiff is a prolific grievance writer who knows how to access and navigate the process. *See* Def. Exs. A-C; Pl. Exs. C, D. *See also* Doc. 47-2. Indeed, Plaintiff himself acknowledges he filed 157 grievances over about five years. *See* Pl. Resp. at 1. Plaintiff's suggestion that a second May 23, 2022 grievance was not processed is also questionable given he contends that he had started making and keeping copies of his submitted grievances so that he would "have proof that he submitted" any that were not processed. *Id.* at 2. Notably, he does not provide a copy of the purportedly non-processed May 23,

2022 grievance. Nor does he explain how he submitted it, where he submitted, what he wrote in it, or how and when he learned it had not been processed.[5]

With respect to the latter argument, Plaintiff says that Defendant Lindblade threatened him at least twice for filing so many grievances, which made him "fear for his life and completely chilled any further use of the already dead end grievance process." *Id.* at 3. "For a prison official's threats of retaliation against a prisoner to make the administrative remedy 'unavailable,' the threat must (1) actually deter the prisoner from lodging a grievance or purs[u]ing a particular part of the process and (2) be one that would deter a reasonable prisoner of ordinary fortitude from doing so." *Pavao*, 679 F. App'x at 826 (citing *Turner*, 541 F.3d at 1085).

Even accepting as true that Defendant Lindblade attempted to chill Plaintiff's use of the grievance system by orally threatening him on two occasions, Defendant Lindblade's alleged threats did not actually deter Plaintiff from accessing the grievance process. On the contrary, despite claiming to have been threatened on more than one occasion, including on April 20, 2022, and sometime shortly after May 23, 2022, *see* Pl. Resp. at 2-3,

---

[5] If the purported non-processed grievance had been a formal grievance, Plaintiff presumably would have received an institutional receipt unless it was intentionally destroyed or discarded before having been logged or stamped. *See* Fla. Admin. Code r. 33-103.006(2)(h) ("The institutional grievance coordinator shall log all formal grievances and provide the inmates with receipts.").

11

Plaintiff continued filing grievances unabated after those dates. *See* Def. Ex. A ¶ 4; Def. Ex. B ¶ 4; Def. Ex. C at 3-4; Pl. Ex. D at 4-5. *See also* Doc. 47-2 (grievance records filed by Defendant Howell) at 73, 78-79.[6]

Aside from arguing the grievance process was unavailable to him, Plaintiff suggests he properly exhausted his administrative remedies because he gave a sworn statement to the IG's Office on June 7, 2022, and Defendants Lindblade and McDonald were interviewed about the use-of-force incident. *See* Pl. Resp. at 4; Sec. Am. Compl. at 13. In some circumstances, an investigation by the IG's Office may be relevant to the exhaustion analysis. For instance, when a prison official, in response to an inmate's grievance at any step of the process, reports the inmate's allegations to the IG's Office for investigation, then, regardless of whether the responding official "denies" or "approves" the grievance, the prisoner may be deemed to have exhausted his administrative remedies. *See, e.g.*, *Luckey v. May*, No. 5:14-cv-315-MW-GRJ, 2016 WL 1128426, at *11 (N.D. Fla. Feb. 17, 2016), *report and recommendation adopted*

---

[6] In a May 18, 2022 grievance, Plaintiff mentioned the May 12, 2022 interaction with Defendants Lindblade and McDonald, but he described it much differently: he said Lindblade handcuffed him and "drag[ged] [him] down [the hall] . . . causing [him] to pinch a nerve in [his] surgically repaired right leg[,] which . . . left [his] leg completely numb . . . resulting in [him] needed a wheelchair." Doc. 47-2 at 79. Even if the May 18, 2022 grievance (#2206-231-019) could be construed as an attempt to complain about the use-of-force incident that is the subject of Plaintiff's complaint, the grievance was denied *after* Plaintiff initiated this action—on June 13, 2022. *Id.* at 77.

*sub nom.*, 2016 WL 1169481 (N.D. Fla. Mar. 22, 2016) (finding the plaintiff exhausted his administrative remedies because his informal grievance was "approved" from the standpoint that his allegations had been referred to the IG's Office). *See also Tierney v. Hattaway*, No. 3:20-cv-5738-LAC-ZCB, 2022 WL 18159995, at *2 (N.D. Fla. Dec. 9, 2022) ("Given that [the plaintiff's] informal grievance was 'approved,' and the matter referred to the [IG], it would have been pointless for [him] to appeal by filing a formal grievance.").

Here, the IG investigation is not relevant to the exhaustion analysis because there is no indication the investigation resulted from Plaintiff having filed a grievance in compliance with the FAC. *See Pavao*, 679 F. App'x at 825 (quoting *Dimanche v. Brown*, 783 F.3d 1204, 1210 (11th 2015)) ("[The plaintiff's] efforts to seek redress from the . . . [IG's Office] are not relevant to the question of exhaustion because they are not part of the prison grievance procedure, and therefore are outside the 'boundaries of proper exhaustion.'"). *See also Fleming v. Espino*, No. 3:20-cv-853-MMH-JRK, 2021 WL 5083743, at *7 (M.D. Fla. Nov. 2, 2021) (concluding the IG's investigation was not relevant to the exhaustion analysis where there was no indication the investigation resulted from a grievance filed by the prisoner).

The FAC provides no exception to the exhaustion requirement in circumstances where allegations of staff abuse are referred to the IG's Office

13

independent of or separate from the grievance process. *See* Fla. Admin. Code rr. 33-103.001 through 33-103.018. The Supreme Court has made clear that Congress's mandatory language "foreclos[es] judicial discretion" with respect to exhaustion, and the only exception to the PLRA's exhaustion requirement is the one "baked into its text": unavailability. *Ross*, 578 U.S. at 639, 648. As such, the IG's investigation alone does not demonstrate Plaintiff exhausted his administrative remedies before filing suit. *See Pavao*, 679 F. App'x at 825.

For the reasons stated, Plaintiff's claims against Defendants Lindblade and McDonald are subject to dismissal because he did not exhaust his administrative remedies before filing this action.

Accordingly, it is now

**ORDERED:**

1. Defendants Lindblade and McDonald's motion to dismiss (Doc. 38) is **GRANTED** to the extent Plaintiff failed to exhaust his administrative remedies. In all other respects, the motion is denied as moot.

2. Plaintiff's claims against Defendants Lindblade and McDonald are **dismissed without prejudice**.

3. The **Clerk** shall terminate Defendants Lindblade and McDonald as parties to this action.

4. Within **21 days** of the date of this Order, Plaintiff shall (1) **show satisfactory cause** why the Court should not dismiss the claims against Defendant Howell for Plaintiff's failure to respond to Howell's motion to dismiss (Doc. 47) and (2) file a response to Defendant Howell's motion to dismiss (Doc. 47). If he does not, the Court may dismiss the claims against Defendant Howell without further notice.

**DONE AND ORDERED** at Jacksonville, Florida, this 22nd day of August 2023.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Richard Harris
Counsel of Record